HIRAM G. WILSON, plaintiff in error, *vs.* THE WILLS VAL-
LEY RAILROAD COMPANY, defendant in error.

1. This was an action by an incorporated railroad company to recover
   from a stockholder certain installments of his subscription, required by
   a resolution of the Board of Directors, to be paid at fixed times. No
   notice of such call is required to be given by the charter, and none
   was proven in this case: *Held,* that as the charter is silent on the
   subject, and as the notice does not create the obligation to pay, but
   only fixes the time of payment, the omission is not a sufficient cause
   for reversal of the judgment.

2. The alteration of a railroad charter, authorizing a change in the loca-
   tion of the road, and the actual change of it, if consistent with the
   original design and object of the enterprise, not materially varying the
   route, nor abandoning a terminus actually established at the time of
   subscription, will not release a stockholder from his subscription,
   though made without his consent.

On the third day of February, 1852, the Legislature of
the State of Alabama granted a charter for the construction
of a railroad " from some convenient point on the Alabama
& Tennessee Railroad, at or near the farm of James Hamp-
ton, thence the most practicable route, through the county of
DeKalb, to the Georgia line, in a direction to intersect the
Georgia & Tennessee Railroad at some convenient point in
Lookout valley." The railroad was denominated " The Wills
Valley Railroad," and the corporation " The Wills Valley
Railroad Company." The Company was organized, and pro-
ceeded to construct their road.

On the 31st of January, A. D. 1854, the Legislature of
the State of Georgia passed an Act authorizing said Wills
Valley Railroad to extend and construct their railroad,
through the county of Dade, in the State of Georgia, to some
point on the Nashville & Chattanooga Railroad, in the county
of Dade. The Company then, after having made a recon-
noisance of the route through said county to Perkins' depot,
sometimes called Lookout station, on said Nashville & Chat-
tanooga Railroad, in said county of Dade, but before making
any location of said contemplated extension, opened books of
subscription therefor in said county of Dade, and the defend-

ant subscribed for five shares, amounting to $250 00, subject to be paid by installments as called for by the directors.

On the 11th December, 1857, the Legislature of the State of Georgia passed an Act amendatory of the Act of 1854, hereinbefore mentioned, repealing so much of it as required said Wills Valley Railroad Company to form the connection with the Nashville & Chattanooga Railroad Company, at some point thereon, within the county of Dade, and State of Georgia. Said Company then located their road so as to connect with the Nashville & Chattanooga Railroad at a point in the State of Tennessee, one mile and a half beyond the Georgia line, and at its nearest point, distant about a mile and a half from Perkins' depot.

The Board of Directors, on the first day of May, 1857, by resolution, called for the payment of ten per cent. of the stock so subscribed on the first day of June, 1857, ten per cent. on the first day of October, 1857, and ten per cent. on the first day of February, 1858, together with interest on each installment from the time fixed for its payment. The installments thus required of the defendant amounted in all to thirty per cent. of his subscription. He having failed to pay as required, this action was brought to recover the same, amounting to $75 00, and interest thereon, according to the terms of said call. The defendant plead *non-assumpsit*—that he had been induced to make the subscription by the requirement of the Act of 1854, making it incumbent on said Company to connect with the Nashville & Chattanooga Railroad at some point in the county of Dade, and by assurances made that the point of connection would be at Perkins' depot, in said county, where he was doing business at the time of subscription; that since his said subscription the plaintiff had made a material change in the contemplated route, connecting with the Nashville & Chattanooga Railroad in the State of Tennessee, at a point distant about four miles from Perkins' depot, without his consent, thereby releasing defendant from his subscription.

On the trial plaintiff proved the defendant's subscription, the call for three several installments of ten per cent. each,

and was proceeding to offer proof of notice of said call, when the Court decided that no other notice than the commencement of the action was necessary. To which defendant excepted.

The defendant then proved that previously to his subscription a reconnoisance or partial survey had been made of the route to Perkins' depot, and that the engineer and agent of the Company, who made the reconnoisance, had said "he supposed that would be the point of connection or terminus on the Nashville & Chattanooga Railroad," which point was some four miles from the actual terminus. He also proved that the connection had actually been made in the State of Tennessee, about one and a half miles beyond the Georgia line, and nearer Chattanooga than Perkins' depot in Dade county, and that by virtue of an arrangement entered into between the plaintiff and the Nashville & Chattanooga Railroad Company, the cars of the former now run to Chattanooga.

Plaintiff, in rebuttal, proved that the route had been finally fixed to connect in the State of Tennessee, because the route to form a connection in Georgia was found to be impracticable, and that the connection as made was much cheaper than the other.

The defendant requested the Court to charge the jury, that the change made in the location of the road after his subscription, was so material as to release him from his subscription, if made without his consent. The Court refused so to charge, but, on the contrary, charged the jury that said change was not so material as to release him, even without his consent thereto; and the defendant excepted.

TATUM, HOOPER, for plaintiff in error.

DABNEY and JACAWAY, *contra.*

Wilson *vs.* The Wills Valley Railroad Company.

*By the Court.*—JENKINS, J., delivering the opinion.

1. The Court below ruled in this case that it was not necessary for the plaintiff to prove notice to the defendant of the call made for installments of his subscription, the suit itself being a sufficient notice. This is the first ground of the exception.

It does not appear from the record on what ground this decision of the Court was placed. We presume it was upon the charter granted by the State of Alabama to this Company. The general rule of law is, that where one party contracts to do a certain thing, on the performance of some act by the other, this other must give notice of such act, unless it be one that carries notice of itself. 2d Parsons on Con. 182-183.

But this, it would seem, should be understood of contracts in which the preliminary act to be done constituted the consideration or equivalent for the act to follow, or in which the liability to perform some duty, or do some act, depended upon a contingency the occurrence of which would not be known to the party on whom devolved the performance of the after act, or duty, but must be known to him entitled to exact it. In cases of this kind, I know of no other rule than to look to the charter which gives existence to the Company. I have examined a great many charters of joint stock companies, in which, as in this, some portion of the capital stock is to be paid as installments may be called for by the Board of Directors. In far the greater number, the charter requires that notice be given, for a stated number of days and in a manner prescribed, to the stockholders, before payment can be required. In some instances, as in the charter of the Wills Valley Railroad, there is no such provision, although a penalty is annexed to non-payment. Such being the fundamental law of the Company, and the notice having reference only to the *time* of payment, and not to the obligation to pay eventually, it is deemed best not to disturb the judgment of the Court below on this point.

2. The graver consideration is whether the change made in the route of the road after the defendant's subscription,

and without his consent, releases him from liability to pay his subscription. Here, it will be observed, the change of route involves no violation of the charter. That first granted by the Legislature of Georgia, authorized an extension through the county of Dade, to connect with the Nashville & Chattanooga Railroad at some point within that county. On application by the Company, the Legislature subsequently repealed so much of the charter as required them to make the connection within that county, or within the State; leaving unimpaired the privilege of extending their road through the county. It is, then, purely a question between the plaintiff in error and the Company.

But what is the character of the change, as affecting him? It is not a change from any one point of connection, previously fixed, to another.

In one of his pleas, the defendant avers that his subscription was induced by the false and fraudulent representation of the Company, that the connection would be made at or near Perkins' Depot, in Dade county; but this he has wholly failed to prove. The nearest approach to it is, that a reconnoisance of a route to that point was made, after which the engineer was heard to say, that he supposed the connection would be made there. But this appears to have been only the professional opinion of an expert, in the employment of the Company, unauthorized so to speak, and not undertaking so to speak for them. No action of the stockholders or of the directors is shown making that the point of connection. The original charter from Georgia does not bind them to that point. It is settled, therefore, that in making the present connection they have abandoned no precise point; have not abandoned, after having adopted, the point at which the plaintiff in error has proven that he was doing business, when he subscribed, and at which he expected the connection would be made. His defence, (if any he have,) is narrowed down to this, that by virtue of an amendment of their charter, procured after his subscription, they have connected their road with the Nashville & Chattanooga Railroad beyond, instead of within, the county of Dade. In other words, he

Wilson *vs.* The Wills Valley Railroad Company.

must establish, to succeed in his defense, that this amendment of the charter, having been obtained without his consent, is not binding on him.    In the case of Winter vs. The Muscogee Railroad Company, 11 Georgia Reports, 438, this Court held that a stockholder was not bound by the amendment of a railroad charter, made without his consent, materially changing the location of the road, as clearly appears from the evidence.    In the same case, however, they say, "we do not pretend to deny that alterations may be made in the charter of an incorporated company, by the procurement of the company, in furtherance of the design and objects of the company, but in all such cases due regard must always be had to the inviolability of private contracts.    The *original contract* of the parties cannot be *materially* or *essentially altered* by an amendment of the charter so as to bind the subscribers thereto without their *assent."*    This distinction will be found sustained by the current of authorities in this country.    Redfield on Railways, 90 to 95 passim, citing Stevens vs. The Rutland & Burlington R. R., 1 Law Reg., 154; Colvin vs. The Turnpike Co., 2 Carter, 511, 656; Pacific Railway vs. Hughes, 22 Missouri, 291; Danbury & Norwalk Railway vs. Wilson, 22 Conn., 435; Greenville & Columbia Railway vs. Coleman, 5 Rich., 118.

The questions to be considered then, are, first, what were the design and objects of the Company; 2ndly, what was the character and effect of the amendment as carried out; and 3dly, what reason was there for it?

1st.  We learn the design and objects of the Company from the third section of the charter, granted by the Legislature of Alabama, to which reference is made by the Georgia Act of Incorporation.    It is in these words:  "That said Railroad shall extend from some convenient point on the Alabama and Tennessee River Railroad, at or near the farm of James Hampton, thence the most· practicable route, through the county of DeKalb, to the Georgia line, *in a direction to intersect the Georgia & Tennessee Railroad at some convenient point in Lookout valley."*    By the Georgia & Tennessee Railroad, in this connection, is meant the Nashville & Chattanooga

Railroad. The original design and object, then, was to intersect the latter road at some convenient point in Lookout valley, to secure the ulterior connections which would result therefrom. This object was to control the route from the starting point, through DeKalb county, Alabama, to determine the point of intersection with the western boundary of Georgia. With this main design and object, a connection with the Nashville & Chattanooga Railroad, at a point in Lookout valley, within the State of Tennessee, would consist as well *prima facie* as a similar connection within the county of Dade and State of Georgia. If it be made to appear that such connection made in Tennessee would be " *convenient,*" and if made in Georgia inconvenient, then the former would be more conformable to that design and object.

2ndly. The character and effect of the change authorized by the amendment of the charter, and actually made, is not so material, so radical, as has been assumed in the argument. No point of connection can be designated as having been abandoned in this change, because none had been fixed at the time of the subscription, from which the plaintiff in error seeks to be released, either by the charter or by any action of the Company. They had the privilege of selecting any point on the Nashville & Chattanooga Railroad, in Dade county, but had selected none. There was then no abandonment of any point; none of that one in which the plaintiff in error was specially interested. This is an important consideration. Another, not less so, is that the connection has actually been made in the same neighborhood, in which is the point to which the hopes (perhaps the expectations) of the plaintiff in error would have brought the road. The evidence is, that these points are four miles apart. The distance from the actual point of connection to the nearest at which it might have been made, without an amendment of the charter, is probably less, and cannot be greater. If they were never bound to his preferred point, and have actually made the connection in the same neighborhood, the change cannot materially affect him.

3dly. The evidence shows that good reason existed for the

change made. The President of the Company being a witness, stated "that the route was changed because it was impracticable to run it so as to connect with the Nashville & Chattanooga Railroad in Georgia, and that it was cheaper to make the road on its present location." From this we must understand that it was impracticable, *with the means of the Company*, to make the connection in conformity with the original charter from Georgia, but was practicable under the amended charter.

The change appearing to consist with the original design and object, involving the abandonment of no previously fixed point of connection, effecting the connection in the vicinage contemplated throughout, and adopted for reasons of a controlling character, cannot be said materially or essentially to alter the original contract between the parties to this action. We think, therefore, that the charge given to the jury in the Court below conformed to the ruling in Winter vs. The Muscogee Railroad Company, and to the weight of authority.

Let the judgment be affirmed.