### SNOOK *v.* THE GEORGIA IMPROVEMENT COMPANY.

To an action for the amount of a subscription to the capital stock of a railroad company, the defendant pleaded as follows: He subscribed for $250 of stock in the A. & H. company which had been incorporated under the general railroad law, the charter providing that the

road should run from Atlanta to Hawkinsville through certain named counties. Subsequently the company, through its directors, applied for and obtained from the legislature a charter, which changed the capital stock from $250,000 to $500,000, and also changed the route in a specified manner. Afterwards the company procured the legislature to pass another act, in which its name was changed from the Atlanta and Hawkinsville to the Atlanta and Florida company, its route changed, and it was allowed to make various extensions and branches, etc. Each of these changes was material, without defendant's consent, and had not been considered or anticipated in his contract to take stock. The original scheme contemplated by the original incorporators of the Atlanta and Hawkinsville railroad was abandoned, and the subscribers were thereby released. Certain named persons applied to the legislature and obtained a charter under the name of the Atlanta and Hawkinsville company, which, under the name of the Atlanta and Florida company, made the transfer of defendant's subscription to the plaintiff. Said company was a different one from the one to whose capital stock he had subscribed; and he had never subscribed to the stock of the Atlanta and Florida company. *Held*,

1. It was error to sustain a demurrer to these pleas.

(*a*) If the charter of a corporation is materially, fundamentally or radically changed by the legislature after a person has subscribed to stock therein, without his consent, he is released from such subscription.

(*b*) If it be true that the general law, under which the first charter was obtained, authorized amendments to be made to the charter, the route to be changed and the capital stock increased. the particular mode for making these changes was pointed out in the general law, which nowhere provides for a change of the terminus of the road after it has been agreed upon by the stockholders.

(*c*) A change of the terminus of a road is a fundamental alteration, which releases the subscriber to its stock before the change was made, if made without his consent. If the defendant assented to such change, he would not be released.

2. The act of 1886 (with its amendment, passed by the same legislature,) is not an amendment to the original charter of the A. & H. company, obtained under the general law, but is a separate, independent and distinct charter.

July 22, 1889.

Corporations. Charters. Stock and stockholders. Laws. Contracts. Railroads. Before Judge VAN EPPS. City court of Atlanta. December term, 1888.

Reported in the decision.

T. W. BIRNEY and ABBOTT & SMITH, for plaintiff in error.

PAYNE & HULL, *contra*.

SIMMONS, Justice. ·

The Georgia Improvement Company brought its action against Snook for $250, which it alleged Snook had subscribed to the Atlanta & Hawkinsville Railroad Company, now the Atlanta & Florida Railroad Company, the name having been changed by an act of the legislature, approved October 24th, 1887. To this action Snook filed the plea of the general issue, and four special pleas. The plaintiff demurred to the special pleas; its demurrer was sustained by the court, and the plaintiff had a verdict. The defendant moved for a new trial, which was refused by the court, and he excepted.

The main question in this case is, whether the court erred in sustaining the demurrer to the defendant's special pleas. The view we take of the case renders it unnecessary for us to discuss all of the pleas which were stricken by the court. The only ones we will discuss are the 3d and 5th; because if they are sufficient in law, and are true, the plaintiff cannot recover.

The third plea, after being stripped of its redundancy and superfluous verbiage, is, in substance, that the defendant subscribed for $250 of stock in the Atlanta & Hawkinsville Railroad Company, which had been incorporated under the general railroad law; that the charter granted to said corporation provided that the railroad should run from Atlanta to Hawkinsville, through certain counties named in the charter; that subsequently to this charter and to his subscription, said company, through its directors, applied to and obtained from the legislature another charter, which charter changed the capital stock from $250,000 to

$500,000, and changed the route of the road and allowed said company to construct a line from Atlanta in a southerly direction to or near Hawkinsville, or to or near Thomasville in Thomas county, or both, and run through such counties as might be necessary, to one or both of said points. The plea further alleges that afterwards, on the 24th of October, 1887, said Atlanta & Hawkinsville Railroad Company procured the legislature to pass another act, in which the name of the company was changed to the Atlanta & Florida Railroad Company, and the route changed, the company being allowed to make various extensions and branches from Thomasville to any point on the State line of Florida. The plea further alleges that each of these changes was material and without the defendant's consent, and had not been considered or anticipated in his contract to take stock, and that he was therefore released from any obligation to do so.

The 5th plea alleges, in substance, that the original scheme contemplated by the original corporators of the Atlanta & Hawkinsville railroad, was given up and abandoned; and the subscribers thereby released; and that afterwards, certain persons (naming) applied to the legislature and obtained from it a charter under the the name of the Atlanta & Hawkinsville Railroad Company, which company, under the name of the Atlanta & Florida Railroad Company, made the alleged transfer of his subscription to the plaintiff. He alleges that said company was a different one from the one to whose capital stock he had subscribed, and that he had never subscribed to the stock of the Atlanta & Florida Railroad Company.

1. We think the court erred in sustaining the demurrer to these pleas. The doctrine is now well-settled that if a charter of a corporation is materially, fundamentally or radically changed by the legislature, after

a person has subscribed for stock therein, without his consent, he is released from such subscription.   On this subject the only difference in the decisions of the courts now is, as to what amounts to a material, fundamental or radical change.   They hold that this is a question of law to be decided by the courts, and not a question of fact for the jury.   Most of them hold that no general rule can be laid down as to what is a material or fundamental change, but that each case must be determined upon its own state of facts.   It is also held that the charter of a corporation is a contract of a dual character; first, a contract between the State which grants the charter and the corporation; and, secondly, a contract between the corporation and its members; and while the State, if it reserves the power to do so, can alter and amend the charter, and the corporation itself cannot object to the alteration or amendment, yet the State has no power to make any material or essential alteration in the contract between the members themselves and the corporation.   *Winter* v. *Muscogee R. R. Co.*, 11 *Ga.* 438 ; *Wilson* v. *Wills Valley R. R. Co.*, 33 *Ga.* 466; *Memphis Branch R. R. Co.* v. *Sullivan*, 57 *Ga.* 240; *Central R. R. Co.* v. *Collins*, 40 *Ga.* 617 ; Thompson on Liability of Stockholders, §70 ; 1 Rorer on Railroads, 147, 200 ; Pierce on Railroads, 98 ; Witter *v.* R. R. Co., 20 Ark. 463; Plank Road Co. *v.* Arndt, 31 Pa. St. 317; Plank Road Co. *v.* Lapham, 18 Barb. 315 ; R. R. Co. *v.* Pottle, 23 Barb. 21 ; Stevens *v.* R. R. Co., 29 Vt. 545 ; Fry's ex'r *v.* R. R. Co., 2 Metc. (Ky.) 314 ; Thompson *v.* Guion, 5 Jones' Eq. (N. C.) 118 ; Middlesex Turnp. Corp. *v.* Locke, 8 Mass. 267 ; Hester *v.* R. R. Co., 32 Miss. 378 ; R. R. Co. *v.* Marsh, 17 Wisc. 13 ; R. R. Co. *v.* Elliott, 10 Ohio St. 57 ; Rwy Co. *v.* Hodgens, 77 Pa. St. 190 ; Caley *v.* R. R. Co., 80 Pa. St. 368.

As to the character of the contract between the State and the corporation, and between the subscribers to the stock of the corporation, and as to the power of the State to alter or amend the charter, see an able and learned discussion of the subject by Chancellor Zabriskie in Zabriskie v. R. R. Co., 18 N. J. Eq. 178.

Applying these rules to the facts of this case, we find that certain persons obtained a charter under the general railroad law, authorizing them to construct a railroad from Atlanta to Hawkinsville. After this was done, Snook subscribed $250, for which amount he is sued in this action. The capital stock, at the time of his subscription, was $250,000. Afterwards the company, without Snook's assent, applied to the legislature and obtained an amendment to the charter, or a new charter (whether it be an amendment or a new charter is immaterial for the purposes of this argument), which changed the southern terminus and the capital stock of the railroad from $250,000 to $500,000. When Snook made his subscription, the charter of the company designated Hawkinsville as the southern terminus, and his subscription was made under the terms of that charter. That charter was the constitution and the law to him and the other subscribers. He agreed with them and the company that he would pay so much in order to have a road constructed from Atlanta to Hawkinsville. According to his plea, nothing was said, anticipated or contemplated about any other southern terminus. Nor was anything said about an increase of the capital stock from $250,000 to $500,000, or to $2,000,000 as afterwards provided by the act of 1887. Snook may have been willing to subscribe for the construction of a railroad from Atlanta to Hawkinsville; he may have owned property at Hawkinsville, or may have had other good reasons for desiring to have the terminus there; and he may have been unwilling for the terminus to be

changed from Hawkinsville to Thomasville. He may also have been willing to embark in the enterprise when the capital stock was only $250,000, and may have been unwilling to have the capital stock increased to $2,000,000. Whether willing or unwilling, he stands upon his express contract, which he made with the company and the other subscribers, that the southern terminus should be at Hawkinsville, and its capital stock only $250,000; and in our opinion, he had the right to stand upon that contract, and neither the company nor the legislature had a right to change his contract so that the southern terminus of the road should be at Thomasville, and the capital stock $2,000,000, without his consent.

But is argued that when he subscribed, the general law under which the first charter was obtained, authorized amendments to be made to the charter, the route to be changed and the capital stock increased. If this be true, the particular mode and method as to how these changes may be made, was pointed out in the general law. The increase of the capital stock could only be done by vote of the stockholders, and the change of route could only be made by a two-thirds vote of the directors; and it may be that he could insist upon its being done in the mode contemplated by the charter of the company to whose stock he had become a subscriber. Whether this be true or not, the general law, under which the first charter was obtained, nowhere provides for a change of terminus of the road after the terminus has been agreed upon by the stockholders. It provides for a change of route between the termini, and provides for branch roads and extensions; but as said before, it gives no authority to the stockholders or the directors, or the legislature, to change the terminus of the road. The weight of authority is to the effect that a change of the terminus of a road is a fundamental alteration,

which releases the subscriber who subscribed to the stock before the change was made, if made without his consent.

For these reasons, and for others which might be added, we hold that this change was a material and fundamental one, and that the defendant was released from his subscription. Of course, if it should appear upon the trial that the facts stated in the plea are untrue, and that the railroad was constructed to Hawkinsville and no change of terminus made, or that if it has been changed Snook assented to it, then he would not be released.

2. We think the court erred also in sustaining the demurrer to the 5th plea. We think that the act of 1886 is not an amendment to the original charter of the Atlanta & Hawkinsville Railroad Company, obtained under the general law, but is a separate, independent and distinct charter. The title to the act is, "An act to incorporate the Atlanta & Hawkinsville Railroad Company, to confer certain powers and privileges on said company, and for other purposes." Acts 1886, p. 102. The first section of the act then names the corporators; and they are not the same altogether as the corporators in the original act. The act further says, after naming these persons, that "they are hereby created a body politic and corporate, under the name," etc., and then proceeds to give them all the powers that are necessary for any railroad company whatever, the right to sue and be sued, to hold property, to condemn land, to mortgage; the amount of the capital stock is fixed, and the right given to join with other railroads; certain persons are appointed directors to act until a regular election can be held by the stockholders, etc., etc. This act was passed and approved in December, 1886. The legislature which passed the act adjourned in December until the summer of 1887, when

the same body amended this act of the preceding session. The title to this amendatory act is as follows: "An act to amend the charter of the Atlanta & Hawkinsville Railroad Company, to change the name thereof to the Atlanta & Florida Railroad Co., to authorize the extension thereof to the Florida line, and for other purposes." The first section of that act recites that "the name of the railroad corporation *chartered* heretofore by the act of this legislature, under the name of the Atlanta & Hawkinsville Railroad Company, be changed to the Atlanta & Florida Railroad Company." The 6th section of the act says, that "said railroad company shall have, in the construction of said extension, all the rights, powers, privileges and immunities granted to and conferred upon the Atlanta & Hawkinsville Railroad Company by the legislature of Georgia, by act approved December 7th, 1886." Construing these two acts together, and the phraseology of the acts, and the fact that the corporators in the original charter and those mentioned in the act of 1886 are not entirely the same, we conclude that these acts are not amendments to the charter granted under the general railroad law, but a separate and distinct charter granted by the legislature. If they intended to incorporate the same company as that already incorporated under the general law, they certainly attempted a very useless thing, for the general law being, as we think, valid and constitutional, the statutory incorporation under it was all that was needed. It perhaps was a safer and certainly as safe a charter as any that could be granted by a special law, whilst that general law was unrepealed.

Counsel for the defendant in error cited us to the case of *Johnston* v. *Crawley*, 25 *Ga.* 316, which, it was claimed, holds that such acts are amendments to the charter, and not a new charter. We do not think that case should control our decision in this case, under the

facts of the present case. Besides, from a reading of the facts of that case, it will be seen that it was not necessary to the decision of that case for the court to hold that these two charters were the same. The main issue in that case was, whether a claimant who had purchased property under judgments which were junior to a mortgage, could hold the property against the mortgagee. Johnston bought the mill and machinery under judgments junior to Crawley's mortgage, and bought with notice that the judgments were junior to the mortgage. The mortgage was foreclosed and was levied upon the mill and machinery, and a claim was interposed by Johnston. All that it was necessary to decide in that case was a very plain proposition of law,—that Johnston's title, arising from a sale under junior judgments, could not prevail over the older lien of the mortgage, whether the corporations were the same or different. We therefore do not think that case should control us in our decision of this case, when it is manifest from the acts of the legislature themselves that they were intended to create a new corporation, and not to amend the charter obtained under the general law.

For these reasons we reverse the judgment of the court below.    *Judgment reversed.*