### 4300.   MIDLAND CITY HOTEL CO. *v.* GIBSON.

### 4301.   MIDLAND CITY HOTEL CO. *v.* GUNN.

1. A material change in the character of the enterprise or purpose of a proposed corporation releases a subscriber to its capital stock who does not assent to or acquiesce in the change.
2. Where one subscribes for capital stock in an enterprise to be organized for the purpose of erecting a hotel on certain described property, he is released from his subscription if, without his express or implied assent, a charter is obtained authorizing the corporation to conduct the business of a hotel company elsewhere than at the location described in the subscription.

DECIDED DECEMBER 10, 1912.

Complaint; from city court of Macon—Judge Hodges. June 25, 1912.

*Hardeman, Jones, Park & Johnston,* for plaintiff.

*W. D. McNeil, Will Gunn,* for defendants.

POTTLE, J. The defendants subscribed for capital stock in a proposed corporation, their subscriptions being identical except as to amount. The defendant Gunn's subscription was in the following language: "Subscription to the capital stock of a corporation to be organized for the purpose of erecting a hotel on the Dempsey property.—Macon, Ga., March 8th, 1911. I hereby subscribe $5,000 to the capital stock of the proposed corporation men-

tioned above, and I hereby promise to pay said subscription as follows: Payments to cover period of three years, $400 for the first eleven payments, and $600 for last payment. It is expressly understood, however, that the subscription is not binding if the total amount subscribed is less than $150,000." After the $150,000 of stock had been subscribed for, subscribers representing the majority of the stock to be issued met and appointed a committee to procure a charter. The defendants were present at this meeting, but, so far as appears, they were not informed of the intention of the incorporators to obtain the charter which was thereafter applied for. The committee appointed by the subscribers duly made application for and obtained a charter for the proposed corporation.

The petition for the charter recited that the petitioners and their associates desired to be incorporated under the name and style of Midland City Hotel Company, with the principal office and place of business in the city of Macon, and with the right to establish branch offices and places of business within the State of Georgia and elsewhere from time to time as might be considered for the best interest of the corporation. The principal business to be carried on by the corporation was stated to be that of a hotel company, and the following rights and powers were applied for and obtained for the corporation: First: To acquire lands in the city of Macon or elsewhere, and to erect thereon buildings suitable for the purposes of the corporation. Second: To purchase, lease, or otherwise acquire hotels, apartment houses, lodging houses, store-houses, restaurants, and other buildings, and real estate or other businesses of a similar character. Third: To build, equip, maintain and conduct hotels and apartment houses, and to do a general hotel business in all its branches. Fourth: To operate, either by itself or others, hotels, restaurants and cafes, and, in connection therewith, barber shops, bath-rooms, cigar and news stands, and to carry on such lines of business as are usual and proper in connection with hotels; to lease, rent, or let any or all of its store-rooms, shops, or other portions, or all of its buildings, and any privileges or concessions in or about its hotels, or connected therewith, or under the control and management of the corporation. Fifth: To buy, sell, lease, and rent real and personal property of all kinds, either for itself or as agent for others. Sixth: To buy and sell its own stock, and to hold any of its own stock so purchased, either as treasury stock, or to cancel

and retire the same, or to sell and reissue the same. Seventh: To sell, lease, rent, or otherwise dispose of any of its property, or the whole thereof whenever in the opinion of the majority of the stockholders it is for the best interest of the company; and, under like circumstances, to sell, mortgage, lease, or rent any of its property for the purpose of raising money. Eighth: To borrow and lend money, and to issue bonds, debentures, or other obligations, and secure the same by mortgage, deed of trust, pledge of its property or securities, or any other means, and to provide for the payment thereof. Ninth: To purchase the stocks, bonds, or other securities or obligations of any hotel company, and, when any hotel is owned or controlled by it, either in whole or in part, by the ownership of stocks, bonds, or other securities of the company or corporation owning or operating the same, to endorse or guarantee the notes, bonds, or other obligations of any such hotel or corporation, and to pledge its credit for the benefit thereof. Tenth: To subscribe for, purchase, sell, or otherwise acquire and dispose of the shares, stocks, bonds, or other obligations, secured or unsecured, of any corporation now or hereafter organized under the laws of Georgia, or of any other State, or of the United States, and to hold the same with all of the rights of ownership therein as is permitted to natural persons.

This charter was duly accepted by a majority of the stockholders at a meeting called for that purpose, but it does not appear that either of the defendants did any act by way of acceptance of the charter, or by participating in the organization, to raise an estoppel against them to urge the defense hereinafter referred to. Upon being informed as to the kind of charter that had been obtained, the defendant Gunn sought, by letter, to withdraw his subscription to the capital stock; and the defendant Gibson, without affirmatively withdrawing, declined to pay the first instalment due on his subscription. Thereupon suits against them were instituted in the name of the corporation, to recover upon the subscription contract. In their answers they urged several reasons why the plaintiff ought not to recover, but, under the view we have taken of the case, only one defense need be referred to. Each of the defendants pleaded that the charter obtained for the corporation was such a fundamental, radical, and material departure from the enterprise as described in the subscription that it released the subscribers. Demurrers to the answers were overruled, and, after evidence was

introduced in behalf of the plaintiff, a nonsuit was awarded in each case, and separate writs of error were sued out complaining of this ruling.

A subscription to capital stock is simply an offer to take and pay for the stock upon the terms and conditions stated in the offer. Hence it is that if a conditional subscription be made, it must appear that the conditions have been met, or that they have been waived by the subscriber, else he will not be bound. *Allen* v. *Hastings Industrial Co.,* 2 *Ga. App.* 291 (58 S. E. 504). "In mutual subscriptions for a common object, the promise of the others is a good consideration for the promise of each." Civil Code (1910), § 4246. Assuming that a subscription for capital stock must be in writing (as to which we express no opinion), the subscription generally becomes binding and enforceable when the consideration therefor has been supplied by the promise of other subscribers to take and pay for stock to the amount named in the subscription and a charter has been obtained to carry on the business mentioned in the subscription. When this is done, the subscriber is in the same situation as one who makes a written offer to sell or purchase goods, where the offer is accepted by the other party. In such case the contract becomes complete and binding on both parties. *Simpson* v. *Sanders,* 130 *Ga.* 265 (60 S. E. 541). The general rule is that where an offer is made to buy or sell goods, it will not become binding until it has been accepted by the other party "unequivocally, unconditionally, and without variance of any sort." This results from the rule that before parties are bound by a contract, there must be mutual assent to the same thing and in the same sense; or, in other words, there must be a meeting of minds. *Robinson* v. *Weller,* 81 *Ga.* 704 (8 S. E. 447). Hence it is that a subscription to stock will not ordinarily be binding unless it appears that the other subscribers subscribed to the same common object, and upon substantially the same terms and conditions. And so likewise, where one subscribes for capital stock in a proposed corporation to be organized for a specified purpose, he will not be bound upon his subscription unless the corporation is organized and a charter obtained for the carrying out of the purpose stated in the subscription. The rule applicable in such cases is stated by the Supreme Court in *Snook* v. *Georgia Improvement Co.,* 83 *Ga.* 61, 64 (9 S. E. 1104), as follows: "The doctrine is now well settled

that if a charter of a corporation is materially, fundamentally, or radically changed by the legislature, after a person has subscribed for stock therein, without his consent, he is released from such subscription. On this subject the only difference in the decisions of the courts now is, as to what amounts to a material, fundamental, or radical change. They hold that this is a question of law to be decided by the courts, and not a question of fact for the jury. Most of them hold that no general rule can be laid down as to what is a material or fundamental change, but that each case must be determined upon its own state of facts." See, also, *Howard* v. *Glenn*, 85 *Ga.* 238, 262 (11 S. E. 610, 21 Am. St. R. 156) ; *Wilson* v. *Wills Valley Railroad Co.*, 33 *Ga.* 466. Substantially the same rule has been applied in cases where an amendment to a charter is proposed, the rule being that when an amendment is "fundamental, radical, or vital," the unanimous consent of the stockholders to its acceptance is essential. *Atlanta Steel Co.* v. *Mynahan*, 138 *Ga.* 668 (75 S. E. 980). Or, as it was expressed in *Winter* v. *Muscogee Railroad Co.*, 11 *Ga.* 438, the charter can not be "materially or essentially altered" by an amendment so as to bind the subscribers without their assent. To the same effect, see *May* v. *Memphis Branch Railroad Co.*, 48 *Ga.* 110.

The charter being a contract between the corporation and its members, it follows, from the application of elementary principles, that a subscriber to stock would not be bound unless he assented, either before or after the charter was obtained, to the terms of the contract as embraced therein. Certainly it is going quite far enough to say that a subscriber will not be released unless there has been a radical, fundamental, or vital change in the contract to which he offered to become a party. The rule is thus stated by Cook, in a recent edition of his work on Corporations : "A material change in the character of the enterprise, the capital stock, or purpose of the proposed company releases those who do not assent thereto." 1 Cook on Corporations (6th ed.), § 62. See, also, §§ 52, 194. The object for which the corporation is to be formed is of the essence of the subscription. If this object is materially or essentially departed from, without the assent of the subscriber, express or implied, he is released from his subscription. One who subscribes to capital stock in a corporation is presumed to have reached the conclusion, after investigation, that the enterprise will

be a profitable one, and he can not be forced to pay money to carry on a business to the operation of which he has not assented. See 1 Thompson on Corporations (2d ed.), §§ 779, 780, where several illustrations of the application of the rule are given.

Let these principles be applied to the present case. The defendant subscribed for stock in a corporation to be organized "for the purpose of erecting a hotel on the Dempsey property." Even if the subscription is required to be in writing, under the statute of frauds, it was competent to show by parol the location of the Dempsey property, which was, according to the evidence, a lot in the city of Macon. It does not appear from the subscription whether it was proposed for the corporation to operate the hotel after it was constructed, or to lease it to others; but it is perhaps true that under the broad terms of this subscription a charter could be obtained either authorizing the incorporators to merely construct a building to be used as a hotel, or to erect the building and conduct the business of a hotel company therein after it was constructed. But be this as it may, it is certain that under the terms of the subscription, the charter was to be confined to the construction and operation of a hotel on the Dempsey property in the city of Macon. It was perfectly competent, in procuring this charter, to ask for and obtain all the powers that were either necessarily or properly incidental to the main object of the corporation. For instance, the incorporators had the right to obtain whatever authority was necessary or proper in the conduct and management of a modern, well-equipped hotel. It may be that they could also obtain authority to invest any surplus funds which the corporation might have in other hotel enterprises, or in stocks or bonds, or in any other way which might seem proper to the governing authorities of the corporation. But the objection to this charter is that, without the assent or acquiescence of the defendants, it embarks them in a general hotel business, not only in the city of Macon, but anywhere else on the face of the habitable globe the governing authorities of the corporation might see fit to invest the capital stock of the company. The defendants were willing to put their money in a hotel to be erected on the Dempsey property in Macon, because, from their knowledge of the situation, they became satisfied that the investment would be a profitable one. They were not willing (or at least they did not express such willingness in their sub-

scription) to invest their money in a hotel to be erected in the city of Atlanta or in New York, or elsewhere than in the city of Macon. When the incorporators obtained a charter which authorized them to build, equip, and maintain a hotel in the city of Macon or elsewhere, there was such a vital, fundamental, and radical departure from the subscription as released the defendants therefrom.

We, fully agree with the contention of counsel for the plaintiff that, where the common object as expressed in the charter is substantially the same as that referred to in the subscription, the mere fact that incidental powers are obtained which are not usually employed in an enterprise of the character described would not release the subscribers. But we wholly dissent from the proposition that the subscribers would not be released because of the mere fact that the corporation, after it was formed, has not attempted in fact to depart from the common enterprise as described in the subscription, when the charter authorized a fundamental departure from the subscription. The only remedy which the defendants had was to refuse to pay their subscription. The corporation still has the power to embark its shareholders in the erection and maintenance of a hotel elsewhere than in the city of Macon. It could not be enjoined from so doing, because this power is unmistakably granted in the charter. By it, and it alone, the authority of the corporation must be determined; but a material or essential variance therein from the general scheme and purpose as set forth in the subscription operates to release the subscriber, unless he assents to or acquiesces in the change. It may be that if the charter had stated, as a particular business to be carried on, the erection and maintenance of a hotel in the city of Macon on the Dempsey property, the subscriber would not be released, even though the charter had granted authority to enter into other business not strictly within the usual scheme of the enterprise stated as the primary object of the corporation, when no attempt was made to exercise any such power. *Cook* v. *Equitable Building and Loan Association,* 104 *Ga.* 814 (30 S. E. 911). But be this as it may, in the present charter the particular business to be carried on was so essentially and materially different from that into which the defendants agreed to enter that it released them from their subscriptions. There was nothing in the evidence to raise any estoppel against either of the defendants to urge this defense, and the view

which we have taken of the case renders it unnecessary to discuss the question whether or not a subscription to capital stock in a corporation becomes irrevocable after the conditions set forth in the subscription have been met, or the question whether the suit was properly brought in the name of the corporation.

There was no error in overruling the demurrers to the answers, nor in granting the nonsuit.                *Judgment affirmed.*