## NEW NUECES HOTEL CO. v. WEIL BROS.* (No. 6776.)

(Court of Civil Appeals of Texas. San Antonio. June 1, 1922. Rehearing Denied June 28, 1922.)

1. **Appeal and error** ⚖⇒854(2)—**Inapt conclusion of law is immaterial if findings support judgment.**

It is immaterial whether the proper conclusion is inaptly expressed or not expressed at all in the conclusions of law, if the facts found justify the judgment.

2. **Corporations** ⚖⇒81—**Provision in stock subscription held to make it conditional and render void if not complied with.**

A provision in a subscription for stock in a corporation organized to build a hotel that if the "hotel is leased that the lessee be bound for as long a time as to retire any bonds that are issued," inserted on a verbal understanding with the promoters that they were to get a bond to guarantee rentals for a time sufficient to retire the indebtedness against the hotel, was intended to secure any and all indebtedness that would rest on the building for security, and a mortgage to secure notes was fully contemplated and included under the word

⚖⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction October 25, 1922.

"bonds," a bond being merely an evidence of debt, and under Rev. St. art. 7092, not more binding than a promissory note, and such provision made the subscription conditional and rendered it void if not complied with.

**3. Corporations ⊙⇒84—Subscription to hotel corporation stock held not binding where subsequent charter authorizes other business in addition.**

A subscription for stock of a corporation entered into before the charter was secured in which the purpose of the corporation was stated as the building of a hotel is invalidated by a subsequent charter authorizing the establishment and maintenance of a hotel, office building, opera and play house, apartment house, or steam laundry, though only a hotel was built, and a charter for all those purposes was authorized by Rev. St. art. 1120, subd. 70.

Appeal from District Court, Nueces County; W. C. Douglas, Special Judge.

Action by the New Nueces Hotel Company against A. Weil and another, partners doing business under the name of Weil Bros. Judgment for defendants, and plaintiff appeals. Affirmed.

Boone, Pope & Savage, of Corpus Christi, for appellant.

Kleberg, Stayton & North, of Corpus Christi, for appellees.

FLY, C. J. This suit was instituted by the Nueces Hotel Company, a corporation, against A. Weil and M. Weil, partners engaged in business under the firm name of Weil Bros., to recover the sum of $1,000, alleged to have been subscribed by them to the capital stock of the Nueces Hotel Company, then in process of organization for the purpose of purchasing a site and building a commercial hotel on the beach portion of the city of Corpus Christi, Nueces county, Tex., and which appellees had failed and refused to pay. Appellees pleaded general denial, non est factum, failure of consideration, forfeiture of its charter by the Nueces Hotel Company on July 2, 1919, and that the subscription had been made conditionally, and that the condition had not been complied with. The New Nueces Hotel Company intervened in the suit, claiming to own the debt against appellees, which was answered by appellees substantially as in the former answer. The intervener was substituted for the Nueces Hotel Company, and upon a hearing of the cause, without a jury, judgment was rendered that appellant take nothing by its suit.

There is no statement of facts, and consequently the facts found by the trial judge must be taken by this court as true and correct. Citizens of Corpus Christi, desiring a commercial hotel, sought subscriptions to that end. Appellees signed a subscription paper for $1,000 upon the condition that if

the "hotel is leased that the lessee be bound for as long a time as to retire any bonds that are issued." This condition was not in the printed subscription, but was written thereon and made a part thereof by one of the appellees. Appellees told the promoters of the hotel that they could not afford to subscribe anything if they stood a chance to lose it, and were told that there was no chance of losing the money; that they were to get a bond to guarantee rental for 10 years which would be sufficient to retire the indebtedness against the hotel property. At the preliminary meeting of the proposed hotel company held on March 6, 1911, $150,000 having been subscribed, it was determined to incorporate the Nueces Hotel Company, and at a subsequent meeting the treasurer was directed to collect one-half of the subscriptions, and a notice to that effect was sent to each subscriber. To that call no response was made by appellees. They were approached by G. R. Scott, the chief promoter, and he told them that the organization must have one-half of the subscription in order to get a charter, and he told them that, if they would send a check for one-half of their subscription, he would guarantee in writing that it would be all right. He afterwards tried to get appellees to waive the written condition on their subscription, but they refused. Scott did not send the guaranty, and the check for the subscription was not given. This suit was filed on December 9, 1912, by the Nueces Hotel Company, and it remained as the plaintiff until the intervention was filed by the New Nueces Hotel Company on November 16, 1921. The claim was assigned by the original plaintiff to the intervener on February 4, 1919.

On November 1, 1911, the hotel property was mortgaged to Robert Driscoll to secure a debt of $210,000 borrowed from him by the hotel company. The hotel was leased to H. H. Franks and J. M. Nix for 10 years from February 3, 1913, the date of its completion, for $31,254.95 per annum. No bond was given to guarantee payment of the rent. Other notes were given by the company amounting to $43,260, and another mortgage on the property given to secure them. No bonds were issued by the company. The charter of the Nueces Hotel Company, according to the records of the Secretary of State of Texas, was forfeited for nonpayment of franchise tax on May 1, 1920. The hotel cost about $450,000, and was a large, commodious, modern building.

The findings of fact are not assailed; the criticisms of the three assignments of error being aimed at certain conclusions of law of the trial judge. The first and second assignments are that the court erred in holding that the subscription made by appellees was a conditional one, as shown by the lan-

guage of the subscription paper. The conclusion is referred to as "in the second paragraph of the conclusions of law prepared and filed by the court." The court found that the language added by one of the appellees as hereinbefore quoted "operated to make the subscription a conditional one," and, being made before the charter was granted, rendered the subscription inoperative and void. The facts show that the negotiations as to the subscription were had before the charter was obtained, and that the condition was added at the time of the negotiations. The facts undoubtedly sustain the finding of fact, and it only remains to determine whether the language used in the condition was such as to render the subscription void if it was not complied with.

[1] The court in the second paragraph first mentioned that the words "any bonds that are issued," which are used in the condition, would not include "the usual mortgage indebtedness covered by ordinary promissory notes," and yet as a complete non sequitur holds, "However, the language thus used operated to make the subscription a conditional one," and, not being complied with before the charter was obtained, rendered the subscription inoperative and void. No matter how inaptly expressed or not expressed at all in the conclusions of law, the only question is whether the facts justify a judgment in favor of appellees on the ground of failure to comply with the condition expressed in the subscription paper.

[2] We are of opinion that the facts clearly show that appellees would not sign the subscription paper until provision was made for securing the money they were in reality lending to the enterprise, and that it was understood and intended by the parties to the contract that "any bonds that are issued" would include any and all indebtedness that would rest on the contemplated building for security, and that a mortgage on the building to secure a heavy indebtedness was fully contemplated and included under the word "bonds." It was the indebtedness on the building against which appellees were desirous of protecting themselves, no matter whether in the form of technical bonds or promissory notes secured by mortgages. All of the facts tend to sustain this conclusion. A bond is merely an evidence of debt. Under the common law bonds were required to be under seal, and were given a formal and higher character than a mere evidence of debt, but not so in Texas, and the promissory note is as binding as a formal bond, and they both mean the same thing, an evidence of debt. Rev. Stats. art. 7092; Mfg. Co. v. Bradley, 105 U. S. 180, 26 L. Ed. 1034; Ackley School District v. Hall, 113 U. S. 135, 5 Sup. Ct. 371, 28 L. Ed. 954; New Providence v. Halsey, 117 U. S. 337, 6 Sup. Ct. 764, 29 L. Ed. 904; Schoonmaker v. Mitchell,

144 Ky. 794, 139 S. W. 968. As said in the last-cited case:

"'The term is used in various significations in popular language, as importing the substantive action expressed by the verb "to bind." If one is bound, he is in bonds, or under bonds. In that sense it implies nothing more than a binding contract, in whatever form.' So a 'bond' is now defined as an obligatory instrument in writing whereby one binds himself to another to pay a sum of money or to do some other act."

No bond executed with all the technicalities of the common law could have been more binding or have borne more heavily upon the hotel property than promissory notes and a mortgage. It was an onerous, oppressive debt against which appellees were contracting, which might eventually dissipate or, as they express it, "freeze out" their $1,000. It did cause a change of owners and a general freezing out. Undoubtedly the contract of subscription was based on a condition which was never complied with, but, on the other hand, absolutely ignored. The first and second assignments of error are overruled.

[3] The subscription contract recited that the subscription was made "to the capital stock of the corporation to be organized for the purpose of purchasing the site and building a commercial hotel on the beach portion of the city of Corpus Christi, Nueces county, Tex." The charter was obtained for "the establishment, maintenance, erection, or repair of a hotel, office building, opera and play house, apartment house, or steam laundry," and it would seem reasonable to hold, as did the trial judge, that the Nueces Hotel Company was organized for purposes wholly foreign to those named in the subscription paper and wholly different from any purpose authorized or intended by appellees. But appellants say only a hotel was built. But suppose an office building or an opera house, or an apartment house or a steam laundry had been built, as authorized by the charter; would appellees be bound on their subscription? We think not. The charter was amplified and broadened to take in purposes never contemplated by the subscribers. The charter could be obtained for all the purposes named in it, as provided in subdivision 70 of article 1120, Revised Statutes, and as has been held in several cases (Ramsey v. Tod, 95 Tex. 614, 69 S. W. 133, 93 Am. St. Rep. 875; Borden v. Rice & Irr. Co. [Tex. Civ. App.] 82 S. W. 463; City of San Antonio v. Salvation Army [Tex. Civ. App.] 127 S. W. 860), but it could not bind appellees to such a charter when they had contracted for one for only one purpose (Cook on Corporations, §§ 54, 62, 194, 502; Woods Motor Co. v. Brady, 181 N. Y. 146, 73 N. E. 674; Midland City v. Gibson, 11 Ga. App. 829, 76 S. E. 600).

In the cited case of Motor Co. v. Brady the New York Court of Appeals held:

"The object of the proposed company, as stated in the agreement, is 'dealing in automobiles and motor vehicles,' while that of the plaintiff, as stated in the certificate, is 'the manufacturing, leasing, purchasing and selling of all kinds of automobiles, motor vehicles and other vehicles.' The element of manufacturing is 'new, and by materially changing the character and enlarging the risks of the business discharged such of the subscribers as did not assent to it."

A number of decisions are cited in the New York case, in one of which, Ashton v. Burbank, 2 Dillon, 435, Fed. Cas. No. 582, it was held:

"A change from a life and accident insurance business by adding the business of fire, marine, and inland insurance was held to be of such a radical character as to discharge previous subscribers from liability to pay future assessments on their stock."

The change in the present case from a commercial hotel business by an addition of the theatrical business, office renting business, and steam laundry business was fully as radical as that from one class of insurance to another.

Appellees did not, by failure to openly repudiate the charter, acquiesce therein or lose their right to attack it. This is not a suit by creditors, but by the corporation itself to enforce payment of a subscription. As said in Baker v. Fort Worth Board of Trade, 8 Tex. Civ. App. 560, 28 S. W. 403, as against the corporation itself, suing for compliance with a contract which the subscriber did not enter into, he can stand upon the terms of his undertaking, and those terms were for a kind of corporation different from the one chartered.

The judgment is affirmed.