## BRANCH *v.* THE AUGUSTA GLASS WORKS.

1. The act of September 21st, 1887 (Acts of 1887, p. 57), authorizing judges of the superior courts to call special terms to grant charters to corporations, is not unconstitutional, either as being a special law enacted in a case for which provision had been made by an existing general law, or as infringing the constitutional requirement of uniformity in the jurisdiction, powers, proceedings and practice of courts.

2. While a corporation formed under the provisions of section 1676 of the code may not begin to transact the business for which it was chartered until ten *per cent.* of the capital stock has been paid in, it may, before this has been done, organize and collect subscriptions to its capital stock. This is one of its methods of realizing the ten *per cent.* essential to its legally beginning the transaction of its corporate business.

3. Where a number of persons sign a written contract by the terms of which they agree to subscribe to the capital stock of a company to be thereafter incorporated under a designated name for the purpose of carrying on a given business, each subscriber to take the number of shares set opposite to his name and pay fifty *per cent.* of his subscription on demand, "and the balance as the directors may direct," the corporation, after being duly formed and organized, may maintain in its own name an action upon this contract against a subscriber thereto for the amount of his subscription thus made to its capital stock.

4. Where such an action was brought by the corporation, there was no error in allowing certain named persons who had been duly appointed its receivers to be made parties plaintiff, as usees.

5. Calls for payments of subscriptions to the capital stock of a corporation which are payable "as the directors may direct," cannot be made by mere street conversations between the president and the directors of the corporation, in which they "agree" that he may call in the subscriptions as needed. Such calls must be made by appropriate corporate action on the part of the directors, and evidenced by the minutes of their proceedings as such.

6. It being stipulated in the original contract of subscription to the capital stock of the corporation, that it was "to be binding upon

each party hereto when $50,000 has been *bona fide* subscribed, and not before," if the subscriptions actually amounted to less than that amount, none of the subscribers were legally bound to pay; and though at the meeting held for the purpose of organizing under the charter, a subscriber, who was subsequently elected president, "verbally guaranteed the subscription to be $50,000," without subscribing for or agreeing in writing to take and pay for the additional stock necessary to make up the $50,000, this was not such a compliance with the terms of the original contract as to make the same binding upon the other subscribers; and it was error to refuse to so charge the jury.

7. As the first motion for a new trial should have been granted, the proceedings had at the second trial were unnecessary, and need not be reviewed.

January 14, 1895.

Complaint. Before Judge EVE. City court of Richmond county. February term, 1894.

FRANK H. MILLER and FRANK H. MILLER, Jr., for plaintiff in error. FLEMING & ALEXANDER, *contra*.

LUMPKIN, Justice.

The litigation presented by the entire record is somewhat complicated, but we have endeavored to formulate in the head-notes the legal principles which control the case, so far as we feel called upon to deal with it at this time.

The Augusta Glass Works, a corporation, brought an action against Thomas P. Branch upon a contract of subscription to the capital stock of the company. Two trials were had. While it seems that the first ought to have been confined to the issues made by the plea of *nul tiel corporation*, the jury not only found against that plea, but also in the plaintiff's favor, upon the merits of the main case, the sum of $500.00, with interest. Afterwards, counsel for the plaintiff filed a disclaimer renouncing all right to enter up a judgment on this verdict for the $500.00 and interest, and asking that the case be reassigned for trial upon the remaining issues involved therein. The court allowed the disclaimer, and ordered

that it be entered upon the minutes.  The defendant filed a motion for a new trial, and also certain exceptions *pendente lite* assigning as error various rulings made by the court at the trial just referred to.  Subsequently the case was tried upon the issue of indebtedness, and again resulted favorably to the plaintiff; whereupon the defendant filed a second motion for a new trial, and also other exceptions *pendente lite* relating to rulings made by the court at the last trial.  Both motions for a new trial were heard together and overruled.  The defendant then brought the case to this court by a bill of exceptions which complains of all the errors alleged to have been committed during the entire progress of the case while it was pending below.

After looking through the entire record, we reached the conclusion that the first motion for a new trial ought to have been sustained; and this being so, the proceedings had at the second trial were not legally necessary, and for this reason will not now be reviewed in detail. We will endeavor, however, in the following brief discussion of the questions upon which we have ruled, to state in connection therewith such of the facts gathered from the voluminous record as may be essential. ·

1. The charter of the Augusta Glass Works was granted under the provisions of section 1676 of the code. One of the pleas embraced in the defense of *nul tiel corporation* was to the effect that the act of September 21, 1887 (Acts of 1887, p. 57), authorizing judges of the superior courts to call special terms to grant charters to corporations, was unconstitutional, on the grounds: (1) that it was a special law enacted in a case for which provision had been made by an existing general law (Code, §5027); and (2) that it was an infringement of the constitutional requirement of uniformity in the jurisdiction, powers and practice of courts (Code, §5156).

We consider the act of 1887 a general, and not a

special law. It has uniform operation throughout the State, and applies alike to all superior courts; but if in any sense it is a special law, we are unable to perceive that it covers any case for which provision had already been made by an existing general law. Nor are we able to see how it in any manner infringes that paragraph of the constitution declaring that "the jurisdiction, powers, proceedings and practice of all courts, or officers invested with judicial powers (except city courts), . . . shall be uniform."

2. The capital stock of the Augusta Glass Works was to be $50,000. Exception was taken to the court's refusal to charge the jury, that "the Augusta Glass Works could not commence to exercise the privileges conferred by the charter until ten per cent. of $50,000 was paid in; and that until such payment was made, there could be no legal call or organization."

While paragraph 3 of section 1676 of the code does provide that no corporation created under the provisions of that section shall commence to exercise the privileges conferred by its charter until ten per cent. of its capital stock has been paid in, this does not mean that before this requirement is complied with it will be unlawful for the corporation to organize and collect subscriptions to its capital stock. The phrase, "to exercise the privileges conferred by the charter," it seems to us, necessarily refers to the right of the corporation to transact the business for which it was chartered. Before beginning the transaction of such business, it must organize and be in a position to deal with third persons, and one of the essential elements of organization is the collection of at least a portion of the capital stock in available funds. The law simply means to declare that the corporation shall not be legally entitled to do business under its charter, with outside parties, until it has in hand at least one tenth of its capital stock. The

collection of subscriptions to the same is certainly a legitimate method of realizing in cash the ten per cent. which must be paid in before the corporation can lawfully begin the transaction of its corporate business.

3. It was further insisted that the Augusta Glass Works could not, as a corporation and in its corporate name, maintain an action upon the contract which formed the basis of the present suit. That contract was in writing, signed by the defendant and several other persons, and was in the following words:

"We, the undersigned, do severally agree to subscribe to the capital stock of a company, to be incorporated and known as the 'Augusta Glass Works,' the amounts set opposite our respective names below. The capital stock is to be not less than ($50,000) Fifty Thousand Dollars, in shares of ($100) One Hundred Dollars, par value, each. The Works are to be located in or near Augusta, Richmond County. Fifty per cent. of the subscriptions hereto are to be payable on demand, and the balance as the Directors may direct. This contract is to be binding upon each party hereto when $50,000 has been *bona fide* subscribed, and not before."

After some investigation, we are satisfied that the corporation had the legal right to bring and maintain in its own name an action upon this contract against any subscriber thereto for the amount of his unpaid subscription thus made to its capital stock. In this conclusion we are supported by a considerable array of respectable authorities, to a few of which we will briefly call attention. Thus, in 1 Spelling on Priv. Corp. §306, it is laid down that where several persons sign a written instrument which involves the formation of a corporation, and the parties have so far progressed with the execution of their agreement as to organize the corporation under it, the corporation immediately becomes a party to the undertaking by relation, and may sue for the sums promised in such agreement. In Haskell, assignee, *v.* Sells, 14 Mo. App. 91, it was said that "an

agreement to take shares in a corporation to be formed enures to the benefit of the corporation when organized in pursuance of the subscription." Bakewell, J., who delivered the opinion of the court in that case, observed that the subscription paper signed by Sells was an unconditional contract to take a certain number of shares, and that this, *prima facie*, constituted him a stockholder; adding: "That there was no corporation in existence at the time the paper was signed, is immaterial. The objection that there is no promise in such a case, is satisfactorily met by the suggestion that the promise becomes definite and fixed when, in accordance with the expectation of the subscribers, the corporation is effected." A somewhat similar subscription for stock was before the Supreme Court of New Hampshire in the case of Ashuelot Boot & Shoe Co. *v*. Hoit, 56 N. H. 548, and it was held "that the corporation when organized could maintain a suit against a delinquent subscriber to enforce the collection of his subscription." A corporation was organized in Illinois under a general statute, and the Supreme Court of that State, in Cross *v*. Pinckneyville Mill Co., 17 Ill. 54, held that payments of subscriptions to stock, made before the organization of the company, could be enforced in an action brought by the company itself after its organization. The same rule is laid down in Buffalo &c. R. R. Co. *v*. Gifford, 87 N. Y. 294. And see, also, Athol Music Hall Co. *v*. Carey, 116 Mass. 471; Penobscot R. R. Co. *v*. Dummer, 40 Me. 172. It is true that many of the contracts of subscription dealt with in the preceding cases contained agreements, not only to take shares of stock in the corporation to be formed, but also to pay the company itself for the same,—or something to that effect. We have not the slightest doubt, however, that the contract with which we are now dealing in the present case amounts substantially to the same thing. The cases above cited

rest upon the principle that where persons are authorized by law to obtain a charter for a specified legal purpose, they represent in the initial steps the yet unborn corporation, and whatever they lawfully do in the premises operates to the benefit of the corporation when it attains to complete legal existence, and it may then enforce contracts made in its behalf by its promoters.

4. The Augusta Glass Works, like many other corporations of the present day, unfortunately fell into the hands of receivers. It plainly appeared that these receivers were appointed by a court having jurisdiction of the parties and of the subject-matter. After their appointment, they were entitled to receive, hold and dispose of the assets of the corporation under the direction and orders of the superior court. We are therefore unable to perceive that the judge of the city court, in which the present action was pending, committed any error in allowing these receivers to be made parties plaintiff, as usees; for, in the event of a recovery, whether they were thus made parties or not, it would be, so far as the record before us discloses, the duty of the original plaintiff to turn over to them the amount of such recovery.

5. We shall not take the time to make an argument, or to cite authorities, to show that a corporation must act through its president and directors, or other executive officers, in their official capacity. Mere street conversations between the president and the directors of an incorporated company, in which they "agree" that he may call in subscriptions as needed, in a legal sense amounted to nothing. Where calls for payments of subscriptions to the capital stock of a corporation are payable "as the directors may direct," these calls must be made by appropriate corporate action on the part of the directors, and the same should be evidenced by the minutes of their proceedings as such.

6. We come now to deal with the point upon which the judgment of the trial court was reversed. As will be seen by reference to the contract of subscription, it was to be binding upon each party thereto " when $50,-000 has been *bona fide* subscribed, and not before." It appeared that when the subscribers met for the purpose of organization, only $48,000 had been actually subscribed; and thereupon, Mercier, who subsequently became the president of the company, stated " that he would guarantee the subscription would be raised to the necessary amount, $50,000." It does not appear, however, that Mercier ever subscribed for, or agreed in writing to take and pay for, the additional stock necessary to make up the $50,000; nor does the evidence, when taken as a whole, show that any binding subscription for the requisite $2,000 was ever made by any other person. It was the right of every subscriber who signed the original contract of subscription to insist upon the condition therein that he was not to be bound until the full amount of $50,000 had been *bona fide* subscribed; that is, until a sufficient number of persons had bound themselves in writing severally to take such amounts of stock as would aggregate at least the sum of $50,000. Until this was done, the promoters of the corporation had no right to organize it so as to render operative in its behalf the contract of any subscriber who did not choose to become bound for his subscription until all the terms of the instrument signed by him had been strictly complied with.

We therefore think that as to Branch, there was never, under the facts before us, any legal organization of the corporation; and consequently, his plea ought, for this reason, to have been sustained. We do not, however, wish to be understood as making any ruling at all upon the question whether the other persons who signed the original contract of subscription might, or might not,

although the total amount subscribed amounted to less than $50,000, go on and organize the corporation and proceed to business. No such question as this is presented by the record before us. We simply mean to hold that, under the facts stated, the organization was not, as to Branch, a legal one; and therefore, the company—whether, as to other persons, a legal corporation or not—should not have been allowed to maintain the action against Branch to compel the payment by him of the $500.00 he had subscribed.

7. We have already stated why the questions raised by the second motion for a new trial are not discussed.

*Judgment reversed.*