HAYNES *v.* WESLEY, administrator.

1. The action in the present case was one upon bank checks, and not a common-law action for money had and received.

2. By the execution and delivery of an ordinary check the drawer contracts with the payee that the bank will pay to the latter or his order the amount designated, on presentation.   Being a simple contract in writing, the limitation prescribed by the statute, in which suit may be brought for its enforcement, is six years from the date of presentation and refusal to pay, unless presentation is in law excused.

3. Ordinarily the drawer is not bound until payment is demanded and refused, but presentation is not necessary when the drawer at the time of its delivery had no funds to his credit in the bank on which it was drawn.   In that event the statute begins to run from the date of the check.

4. The plea that if the debt was due, it was not due to the plaintiff, was, under the admissions of the answer, properly stricken.   So also was the plea to the effect that there was a parol agreement that the debt evidenced by the check should bear no interest.

Argued January 9,—Decided January 26, 1901.

Complaint.   Before Judge Reid.   City court of Atlanta.   May 28, 1900.

*W. O. Wilson,* for plaintiff in error.
*Tompkins & Alston,* contra.

LITTLE, J.   Wesley, as administrator *de bonis non, cum testamento annexo,* of the estate of Grant, instituted an action against Haynes, to recover a sum of money alleged to be due by the latter to the former.   The allegations of the petition are: that John A. Grant was named in the will of the testator as his executor; that he qualified, and letters testamentary were issued to him; that subsequently he resigned his trust, and, his resignation having been properly accepted, the plaintiff was appointed administrator *de bonis non,* with the will annexed, of the estate of the testator; that on December 17, 1895, the defendant delivered to Grant, as executor, two checks drawn upon the Atlanta National Bank for $2,840, which represented money collected by the defendant as the agent of Grant, executor, and was due to him in his fiduciary capacity.   Copies of the checks were attached to the petition.   The defendant admitted that the plaintiff was administrator succeeding Grant, executor, as alleged in the petition, and the execution of the checks as alleged, denying their consideration to have been for money collected, but averring that they were given for money loaned to him by Grant, executor.   He also demurred to the petition, on the ground that it showed that the action was for money had and received, and that it was barred by the statute of limitations; and on the further ground that the petition does not allege that the checks were ever presented for payment, or dishonored.   The defendant also pleaded, subject to his demurrer, that, by agreement with the executor, the debt represented by the checks was to bear no interest.   He also pleaded the statute of limitations; and that plaintiff had no right to recover, because if the sum was due at all it was due to John A. Grant, and not to the plaintiff.   The court overruled the demurrer, and, on motion, struck the pleas; and the defendant excepted.

The first question which arises is whether the action is barred by the statute of [limitations, and the answer to this question will be determined by the character of the suit and the legal obligation which rests on the drawer of a check.   The petition, after describing the checks given by the defendant to Grant, executor, as to dates, amounts, payee, and the bank on which they were drawn, alleged that the defendant was indebted to the plaintiff in an amount which

the checks represent, together with interest from their date; and to the petition the plaintiff attached copies of the checks. While the petition might, and should properly, have more plainly expressed the contract sued on, the demurrer does not raise the point of insufficiency in this particular, but, on the contrary, accepts the allegations made, as constituting an action to recover money had and received by the defendant for the plaintiff. We are of the opinion that, in the absence of a special demurrer calling for more specific allegations, the petition should be construed as an action on the checks as contracts. While it sets out the consideration for which the checks were given, this allegation must be construed as explanatory and made by way of inducement, and not as the basis of the action. Treating the petition, then, as an action based on the checks, it is necessary to determine the nature of the undertaking between the drawer and payee, which is evidenced by the check, in order to determine the period of time within which the action must be instituted to avoid the bar of the statute of limitations. The Civil Code, § 3767, declares that all actions upon promissory notes, bills of exchange, or other simple contracts in writing shall be brought within six years after the same become due and payable. A check is said by Mr. Daniel, in the second volume of his work on Negotiable Instruments, § 1566, to be "a draft or order upon a bank or banking house, purporting to be drawn upon a deposit of funds for the payment, at all events, of a certain sum of money to a certain person therein named, or to him or his order, or to bearer, and payable instantly on demand." Taking this definition to be a correct one, it will be found that the instruments sued on met all the requirements named. They were drawn on the Atlanta National Bank, were payable to the order of John A. Grant, executor; one specified the sum of $2,800, the other $40; and by their tenor they were payable at once. It is said by Mr. Byles in his work on Bills (8th ed., by Wood), bottom page 55, that "a check on a banker is, in legal effect, an inland bill of exchange." If it is, the period of limitation is fixed at six years; but, as a matter of law, there are several differences between a bill of exchange and a simple check, which are clearly pointed by Mr. Justice Swayne in the case of Merchants Bank *v.* State Bank, 10 Wall. 647, where he says: "Bank checks are not inland bills of exchange, but have many of the properties of such commercial paper. The chief

points of difference are, that a check is always drawn on a bank or banker. No days of grace are allowed. The drawer is not discharged by the laches of the holder in presentment for payment, unless he can show that he has sustained some injury by the default. It is not due until payment is demanded, and the statute of limitations runs only from that time. It is by its face the appropriation of so much money of the drawer in the hands of the drawee to the payment of an admitted liability of the drawer." Judge Nisbet, in the case of *Daniels* v. *Kyle*, 1 *Kelly*, 305, said that checks partake somewhat of the nature of bills of exchange, but they also differ from them in several material particulars. But if a check is not to be treated as a bill of exchange, it must not be understood that no contractual relations exist between the drawer and payee. It is agreed on all sides that the execution and delivery of such a paper assigns to the payee a specified amount represented as belonging to the drawer, in the hands of the drawee, and it is really an undertaking that the bank or banker on whom it is drawn will on demand deliver to the payee the amount of money expressed. Dan. Neg. Inst. § 1646. It must, therefore, be ruled that a check on a bank, payable on demand, is a written contract coming within the contemplation of the statute, when "simple contracts in writing" are named, and that the period of limitation prescribed in which suit may be instituted on a check is six years.

But the demurrer further avers that the petition sets out no cause of action, because it does not allege that the checks sued on have ever been presented for payment and payment refused. To meet this demurrer, the plaintiff amended his petition and alleged that no demand was made, because the defendant informed the petitioner and his predecessor that he had no funds in the hands of the drawee with which to pay the checks, and that there were no funds in the hands of the drawee at the time said checks were drawn, belonging to the drawer or to the credit of the drawer, out of which to pay the same. The general rule, that presentation of a check and payment demanded is necessary to bind the drawer, is thus stated by Mr. Daniel (§ 1646): "A simple check which is unpaid, and has not been presented for payment, can not be used as evidence of any indebtedness from the drawer to the payee; . . and until demanded, the drawer is not bound." There are, however, exceptions to this general rule, and, in order to bind the drawer at

the instance of the payee, it is not always necessary that demand shall be made. The same author, in his Treatise on Negotiable Instruments (§ 1596), says: "There may, however, exist sufficient excuse, on the part of the holder, for delay or failure in making presentment, or giving notice. Thus, if the drawer had no funds in the bank at the time of drawing the check, or subsequently withdrew them, he commits a fraud upon the payee, and can suffer no loss or damage from the holder's delay or failure in respect to presentment and notice. He is, therefore, liable without presentment or notice, and may be sued immediately"—for which he cites a great number of cases in note 4 on page 608. See also Byles on Bills and Notes, *20. In the case of *Daniels* v. *Kyle*, supra, Judge Nisbet said: "The drawer has no right to complain of the holder letting it remain in the hands of the drawee; and he has no right to complain of its not being presented for payment, unless, before presentment, the drawee has failed, or in some other way, by reason of the holder's failure to present, he has sustained injury." See also *Patten* v. *Newell*, 30 *Ga.* 271. Under the principles above announced, the demurrer was properly overruled.

Complaint is made that the court struck the pleas filed by the defendant. That relating to the statute of limitations has been disposed of above. The plea that the debt by agreement was not to bear interest tended to vary the terms of the written contract. Nothing of the kind was expressed in the writings, and as the writing itself spoke the terms of the contract agreed on, and constituted a liability which carried interest from date, if the circumstances alleged be true, the verbal contract entered into prior to the execution of the checks could not, of course, affect their terms. Nor is there any merit in the averment that the money alleged to be due to the plaintiff as administrator was in fact due to John A. Grant individually. It was admitted in the answer that Grant was the duly qualified executor of the will of L. P. Grant, and that he continued as executor until March, 1900. During this time the checks were given to him as executor, and, being so payable, they subsequently came into the hands of the plaintiff as his successor in the representation of the estate of L. P. Grant. Besides, the checks having been indorsed without recourse by the payee, the defendant could not inquire into the title of the holder, except for the purpose of letting in a defense which he nowhere seeks to make.

*Judgment affirmed. All the Justices concurring.*