### 351.  ALLEN & CO. *v.* HASTINGS INDUSTRIAL CO.

1. A stock subscription is a transaction between the subscriber and the corporation, and the obligation of one can only be sustained by the corresponding obligation of the other. If both are not bound, neither is bound. Therefore a subscription which is not binding upon the corporation until a stipulated amount has been secured and accepted by the corporation is also not binding upon the subscriber; and until these conditions have been fully accomplished and the subscription has ripened into a binding contract, any party may withdraw therefrom without the consent of the others. · The subscriber may withdraw his subscription, and the corporation may refuse to accept.
2. As to a tentative contract between the subscribers to the formation of a proposed corporation and a third person, conditioned that it shall not become binding until a certain sum is subscribed, one who has signed as a subscriber may withdraw his subscription, without the consent of such third person, at any time before the sum named has been subscribed.

Complaint, from city court of Bainbridge—Judge Harrell. December 11, 1906.

Submitted May 14,—Decided July 10, 1907.

*E. S. Longley,* for plaintiffs in error.

*Russell & Hawes,* contra.

HILL, C. J.  The Hastings Industrial Company, a corporation under the laws of the State of Illinois, brought suit in the city court of Bainbridge against Allen & Company, a partnership doing business in the city of Bainbridge. The suit was based on a contract of subscription for stock, for a canning factory to be erected at Bainbridge by the Hastings Industrial Company. The material portions of the contract are as follows: "We, the subscribers hereto, desiring a canning factory of the following description located at and near the town of Bainbridge, county of Decatur, State of Georgia, hereby enter into this agreement with the Hastings Industrial Company of Chicago, Illinois, party of the first part, the subscribers hereto being second parties, for the construction and equipment of a canning factory, to be built and equipped according to the descriptions endorsed hereon, on the following terms and conditions, for $6,900. This contract is not binding unless the amount of $6,900 or more should be subscribed; and it is understood that no subscriber is liable for a greater interest in said factory when same is completed than is represented in his or her amount of subscription. Each subscriber

agrees to pay the amount subscribed by him or her to the first party when the factory is completed, and no more. Subscriptions to this contract may be secured for any amount; and for this purpose one or more duplicates of this form of this agreement may be circulated by second party, and at any time after the subscriptions on all forms to be circulated shall equal or exceed the purchase-price, it may be closed by the first party's special agent signing the same, and such form shall be taken together and constitute the sole contract between the parties. First party shall have the right to first collect from said subscription if it sees fit the entire amount due under this contract, but all money, notes, or subscriptions, remaining after the first party has been fully paid, is the property of the second parties, and may be used by them as surplus. Second parties agree to appoint an executive committee of three when this contract is closed, with full power and authority in a majority to represent them in all of their business herein, and from time to time to inspect the work and material of the first party while it is building said factory and placing said material. Said second parties shall within ten days from the date of this contract select and furnish at the expense of second parties suitable and reasonably level land, with water ready on same, with which to connect pump for the use of said factory, and designate to first party in writing the land so selected, and it is further understood that in case second parties should fail to furnish said land and water within ten days after the execution of this contract, said party of the first part, at its option, may select and furnish land and water in behalf and at the expense of the subscribers. Said factory to be completed by first party within ninety days, or thereabouts, after the same is located as above provided, and payment for same shall be due from date of completion. In case first party shall be delayed in the execution of this contract by strikes, storms, unavoidable accidents, and other causes over which it has no control, then the time limit for the completion of this contract shall be extended for a period of time equal to such delays. For the purpose of forming a corporation to own and operate said factory and fully carry out the intention of subscribers, it is hereby agreed that when this contract is closed, second parties are to incorporate under the laws of the State, fixing the aggregate amount of the capital at not

less than the contract price, divided. into shares of one hundred dollars each, or in accordance with the laws of the State,. which are to be issued to the subscribers in proportion to their paid-up interests in said factory. The specifications and description of said factory building and machinery attached hereto, and the provisions following same, are a part of this contract. First party agrees to furnish at the expense of second parties an experienced processor for the first season, if second parties give first party thirty days written notice that they desire one. All contracts with agents must be in print or writing. For the full and faithful performance of our respective parts hereof, we bind ourselves and successors. Executed and dated this 8th day of February, 1906. The Hastings Industrial Company, per O. Pressprick, special agent."

The aggregate amount of $6,900 was subscribed by various citizens of Bainbridge under this contract. The defendants subscribed for three shares, or $300. The suit is for this unpaid subscription. The defense relied upon was, that this contract was not binding until the amount of the contract price, $6,900, had been subscribed and the contract closed by the special agent of the plaintiff signing the same; that defendants were released from this subscription by the special agent of the plaintiff, who stated that he had authority to make such release, almost immediately after they had made the subscription, before the requisite amount of $6,900 had been subscribed and before the contract had become executed by the special agent signing and accepting the same for the plaintiff. This verbal agreement releasing the defendants was entered into while the contract was unilateral and before it became binding on either party. It was not denied that the agent had released the defendants from the contract. His right to do so was challenged. Nor was it denied that this release was made by the agent before the $6,900 had been subscribed, and before he had closed the subscription and accepted the contract. We do not think the agent's authority to release is. material. He was the special agent charged with the work of getting .the. subscriptions and closing the contract for the industrial company. He certainly was the proper agent for the defendants to notify of their intention to withdraw from the contract.. It can not be doubted that the contract was executory and not binding .upon

either party unless the $6,900 was subscribed and the subscription closed and the contract accepted. Until these conditions were fully performed, the contract was inchoate and incomplete, and either party had the right to withdraw therefrom. The right of withdrawal was given by law, and did not depend upon the assent of the other party.

Whether the defendants' proposition be considered as an agreement to pay so much for the erection of a canning factory, or as an offer to subscribe so much to the stock of a corporation on certain conditions, they withdrew this proposition or offer, before acceptance and completion of the contract; and we think they had a clear right to do so. Any unaccepted offer either to pay money or to subscribe for stock may be legally withdrawn. Civil Code, §3645; 2 Clark & Marshall on Private Corporations, §451, and notes. We do not deem it important to decide the other questions in the record, as our judgment of reversal on the foregoing point is conclusive of the case.                    *Judgment reversed.*