## 1011.  PURCELL *v.* ARMOUR PACKING COMPANY.

1. A declaration setting forth a bank check and alleging, that it was given to the plaintiff by the defendant in consideration of merchandise which the plaintiff delivered to a third person, and that the check had been duly presented for payment, and that payment thereof was refused by the drawee, sets forth a good cause of action.

2. Between the immediate parties, a bank check must be supported by a consideration, in order to be enforceable against the maker.

(*a*) When sued thereon by the original payee, the maker can show by parol evidence that the check is without consideration, or that the consideration has failed.

(*b*) A plea alleging that a check was given to the plaintiff by the defendant without any present consideration, but with the understanding that if a third person would turn certain money over to the defendant at a future time the check would be paid out of it, and further alleging that the money has never been turned over to the defendant, sets forth a good defence; and the court erred in striking the plea, on demurrer.

3. In a suit by a payee against a maker of a bank check, the plaintiff makes out a prima facie case by proving the execution and delivery of the check, and that it has been duly presented to the drawee for payment, and payment thereof refused. The check itself imports its own consideration, in the sense that consideration will be presumed until the contrary appears.

Appeal, from Glynn superior court—Judge Parker. December 3, 1907.

Submitted March 13,—Decided April 20, 1908.

*Twitty & Reese,* for plaintiff in error.  *D. W. Krauss,* contra.

POWELL, J.  1.  The Armour Packing Company, as payee, sued Purcell as maker, on a bank check.  Purcell demurred because the declaration did not allege a consideration and did not allege that payment of the check had been demanded of the drawee.  The plaintiff thereupon filed the following amendment:  "Plaintiff alleges that the said unpaid check was properly and duly presented for payment at the Brunswick Bank and Trust Company, Brunswick, Ga., upon which said check was drawn, but that before plaintiff presented said check for payment on the following Monday morning, having been given on the previous Saturday afternoon after banking hours, the said defendant wrongfully, improperly, and without authority of law, had stopped the payment of said check by said Brunswick Bank & Trust Company, and had ordered and instructed said bank not to pay plaintiff the same.  Plaintiff shows to the court that the said check was accepted as cash by

plaintiff, in payment of certain goods supplied to one Houston Floyd, and represented a cash sale, and cash payment of certain meats and supplies furnished to said Houston Floyd for cash and on strictly cash terms, and was so given and accepted as cash, said plaintiff dealing on a cash basis with said Houston Floyd, under some arrangement between said defendant and Floyd, the said defendant giving his check for such meats simultaneously with the delivery of same to said Floyd." After allowing the amendment, the court overruled the demurrer, and the defendant excepted. There is no merit in the demurrer. The amendment sufficiently alleged a demand and refusal. *Haynes* v. *Wesley,* 112 *Ga.* 668 (3), (37 S. E. 990, 81 Am. St. R. 72) ; 2 Dan. Neg. Inst. (5th ed.), §1646. And even if it was necessary to allege a consideration, it is difficult to see wherein the amendment was lacking in this particular. The allegation is that the delivery of the meat to Floyd was the detriment which the plaintiff suffered in exchange for the check. The act of delivering the meat was the doing of that which the plaintiff was not bound to do, and was the injury which it suffered. Detriment to the promisee may furnish a good consideration. Civil Code, § 3657.

2. The defendant excepts to the court's action in striking its plea and answer, which in substance is as follows: The execution and delivery of the check sued on was admitted, and it is alleged that the check was given under the following circumstances: On the morning of June 16, which was Saturday, the plaintiff's agent came to the defendant and informed him that he had a consignment of meat for one Floyd and requested defendant to give a check therefor. Defendant replied, that while he had, on several occasions in the past, given his checks for goods consigned to Floyd, this was because Floyd had funds on deposit with him out of which the checks were to be paid; that on this particular day Floyd had no such funds with him, and therefore he could not give plaintiff a check for the meat. Thereupon plaintiff's agent went away, but in the afternoon of the same day he returned and told defendant that he had been to see Floyd, who was entirely out of meat, that it being Saturday, Floyd was very anxious to obtain enough of the consignment to enable him to carry on that day's business; and plaintiff's agent then requested defendant to give a check for a portion of the consignment, dating the same Monday,

June 18, stating to defendant that he would send the check on to Savannah, and it would not be returned until the following Tuesday, and in the meantime Floyd would have sold the meat and collected for it and turned the money over to defendant for deposit. "Defendant refused to do this, but stated to plaintiff's said representative that if it would be any accommodation to him, he would give his check for the amount of the part of said consignment which plaintiff would deliver to said Floyd, for the day's business, dating the same Monday, June 18, upon the distinct understanding that plaintiff would rely upon the funds which said Floyd would turn over to defendant on the Monday and Tuesday following, for payment of said check. . . Defendant expressly stated to plaintiff's said representative that he had no funds in his hands belonging to said Floyd and subject to his check, except possibly a dollar or two, and that he would not use his personal funds to meet such check. Plaintiff's said representative said that this would be all right, as he was confident that said Floyd would be able to dispose of the meats which he intended to deliver to him, and that under the arrangement suggested, the check would be protected, and would be paid when presented. . . Defendant avers that the check sued on was given under the circumstances hereinbefore detailed, and that there was no consideration moving unto him therefor, and he was acting merely as a custodian of the funds which said Floyd might turn over to him to be applied to the payment of said check, and did not agree to assume said Floyd's indebtedness, or any part thereof, but distinctly and expressly refused so to do; that the plaintiff did not treat the check as payment of its account against said Floyd for said amount; that no assignment of plaintiff's account against said Floyd was ever made or mentioned, and that defendant is in no way liable to plaintiff either for said check or for said account or any part thereof."

In striking this plea the trial judge held that, assuming all the facts alleged therein to be true, still the plea fails to set up a good legal defense to the plaintiff's cause of action. In this we think he erred. This plea in effect alleges, that the check was not given or accepted as payment for the meats delivered to Floyd, nor was the delivery of the meats the consideration for the check; that it was in fact without any present consideration; that while under the agreement between the plaintiff and the defendant a

consideration for the check might be supplied by the payment by Floyd to the defendant, on Monday or Tuesday following, of an adequate amount of money, it had not been paid. If in fact the check was without present consideration, it was primarily a nudum pactum, though the subsequent payment by Floyd of the money could have supplied a consideration and have rendered the promise binding; and if this is the truth of the case, the check was not binding until the money was paid by Floyd, for the obvious reason that until this had been done, the promise lacked the indispensable prerequisite of consideration. "A promise made for a consideration thereafter to be performed, though it will be invalid as a promise, will take effect as an offer, and will therefore become a binding promise as soon as the consideration is performed, unless it has been revoked or has otherwise ceased to exist before that time." Langdell's Summary of the Law of Contracts, § 70; *Morrow* v. *So. Ex. Co.*, 101 *Ga.* 812 (28 S. E. 998) ; cf. *Toombs* v. *West*, 94 *Ga.* 280 (21 S. E. 522) ; *Jones* v. *Glover*, 93 *Ga.* 484 (21 S. E. 50). It does not make any difference, in the application of the rule, whether the consideration contemplated by the promising party is to be supplied by the promisee himself or by a third person. Civil Code, § 3664; *Bell* v. *Sappington*, 111 *Ga.* 391 (36 S. E. 780).

In showing by parol evidence that the check is unsupported by any consideration, either immediate or supplied, the defendant does not, as the plaintiff contends, alter the terms of a valid written contract, but merely shows that there has never been any contract at all, for lack of one of the elements necessary to its creation. It is hornbook law that even though a writing express a consideration, the defendant, when sued thereon, can show by parol evidence that there is in fact no consideration, or that the consideration has failed. *Hawkins* v. *Collier*, 101 *Ga.* 145 (28 S. E. 632) ; *Pitts* v. *Allen*, 72 *Ga.* 69. Suppose the defendant had said to the plaintiff, "I hereby deliver to you my check dated ten days in the future, in consideration of your delivering to me in the meantime your horse;" and that the plaintiff, assenting to the proposition, took the check, held it eleven days, and sued the defendant thereon without having in the meantime delivered the horse. Could not the defendant show, by parol evidence, that the plaintiff had never delivered the horse? And if he did so show,

would it be contended that this would not be a good defense to the suit on the check, so long as it remained in the hands of the original holder? If so, why can not the defendant in this case show that the money, the payment of which, according to his plea, was to be the only acceptable consideration for the check, has never in fact been paid to him? In each case the defendant is showing merely that the writing set up is not a contract. Civil Code, §3656; *Davis* v. *Morgan,* 117 *Ga.* 504 (43 S. E. 732, 61 L. R. A. 148, 97 Am. St. R. 171); *Molyneux* v. *Collier,* 30 *Ga.* 731 (5); *Knight* v. *Knight,* 28 *Ga.* 165. Of course, if in fact inquiry into consideration will alter or change the terms of a valid written contract, parol evidence in regard thereto will not be received. *Well-maker* v. *Wheatley,* 123 *Ga.* 201 (51 S. E. 436); *Pitts* v. *Allen,* supra; *Atkinson* v. *Lanier,* 69 *Ga.* 640 (2); *Capps* v. *Edwards,* 130 *Ga.* 146 (60 S. E. 455). That is to say, if an unconditional written promise is founded upon a consideration, parol evidence is inadmissible to engraft a condition on it; but if a written contract apparently unconditional rests upon no consideration other than the doing of something or the happening of something subsequently to the execution of the writing, the doing of that thing or the happening of that event of necessity becomes a condition precedent to the existence of the contract, and parol evidence may therefore be heard on this question. The plea of the defendant alleges facts which, if the allegations are true, show that there is not and never has been any consideration moving to him for the check, and, therefore, it is not enforceable against him by the payee. The doctrine expressed in 2 Ames' Cases on Bills & Notes, 876 (14), to the effect that a bill or note is binding between the immediate parties even without consideration, whether correct from a historical standpoint or not, is not now the law of this State (*Wilensky* v. *Morrison,* 122 *Ga.* 664 (50 S. E. 472); *Morrison* v. *Hart,* 122 *Ga.* 660 (50 S. E. 471); *Pettyjohn* v. *Liebscher,* 92 *Ga.* 149 (17 S. E. 1007); *Radcliffe* v. *Biles,* 94 *Ga.* 480 (20 S. E. 359)), nor does it represent the present-day current of the authorities. 7 Cyc. 690.; *Horn* v. *Fuller,* 7 N. H. 511. The check has never been negotiated to an innocent purchaser, and therefore the rights of such a holder are not involved. A check merely negotiable but not negotiated must, like any other contract not under seal, be supported by a consideration. The consideration of a contract is that present or

17

promised benefit to the maker, or detriment to the other party, through which the consent of the promisor is gained.

The pleadings of the parties in the case sub judice raise a square conflict upon a controlling question of fact,—namely, as to whether or not there was a consideration for the check. On the one hand the plaintiff contends that the consideration inducing the contract was the detriment which it suffered in delivering the meat to Floyd; on the other hand the defendant denies this, and contends that the consideration upon which the minds of the parties met was the benefit which he was to receive by the payment to him of certain money by Floyd. If each contention is supported by proof, a question for the jury arises. By striking the defendant's plea the judge precluded the defendant from introducing evidence in support of his contention; and, in so doing, committed reversible error.

3. After the defendant's plea was stricken, the case proceeded to trial. The plaintiff introduced in evidence the check, the execution and delivery of which the defendant admitted, and the admission in open court, of counsel for the defendant, that the check had been duly presented for payment and payment thereof refused. The plaintiff closed; whereupon the judge directed a verdict in his favor. This action of the court is the subject of final assignment of error in the bill of exceptions. The defendant contends, that the plaintiff, in suing on a bank check, must, as a part of his prima facie case, prove a consideration for the check; that a check, as between the immediate parties, is merely a *simple contract*, and is like any other simple contract, as to proof of consideration. It is undoubtedly true that for certain purposes a bank check is regarded as a simple contract. For example, the statute of limitations as to "simple contracts in writing" applies to checks. *Haynes* v. *Wesley,* 112 *Ga.* 668 (37 S. E. 990, 81 Am. St. R. 72). But in other respects a bank check more nearly resembles a specialty than a simple contract, and the law governing specialties is applicable thereto. "The term 'specialty' is applied to an instrument which becomes effective by the mere fact of its formal execution. There are two classes of specialty contracts in the English law,—common law specialties and mercantile specialties. The first class includes bonds and covenants, i. e. instruments under seal; the second class includes bills and notes, and policies of insurance, and possibly

other mercantile instruments. There is a prevalent notion, traceable to an opinion given in the House of Lords in 1778, in the case of Rann v. Hughes, 7 T. R. 350, n., that only contracts under seal can be specialties, all other contracts, whether written or oral, being merely simple contracts. The fallacy of this notion is easily demonstrable by an examination of the resemblances between bills and notes and instruments under seal, on the one hand, and the differences between bills and notes and simple contracts, on the other hand, in those points in which specialties and simple contracts most strikingly differ from each other." See 2 Ames' Cases on Bills and Notes, 872. That learned author proceeds to show that bills, notes, and checks are specialties, and are so treated at common law. But whether a check is a specialty or not, under our law (see Civil Code, §§ 3634 et seq.), it is certainly such an instrument as is by the law merchant negotiable, and as to which a consideration will be presumed. 8 Cyc. 109, 222; 2 Words & Phrases, 1111; *Daniels* v. *Kyle,* 1 *Ga.* 304, 305. In 2 Daniel on Negotiable Instruments (5th ed.), §§ 1646, 1652, it is said: "In the hands of the payee, a bank check which is unpaid and has not been presented for payment can not be used as evidence of any indebtedness from the drawer to the payee, for the drawer has only contracted that the bank should pay the amount on demand, and until demanded the drawer is not bound. But when this is done and shown, the check then imports a debt from the drawer to the payee, and it may be sued on without proving the consideration, value received being presumed. . . Whenever a check is negotiable, it is undoubtedly subject to the same principles which govern ordinary bills of exchange in respect to the rights of the holder. In the first place, it is evidence of valuable consideration as between the immediate parties thereto." In a suit on a bill of exchange or other instrument negotiable by the law merchant, it is not necessary to aver or prove a consideration therefor. 8 Cyc. 109, 222; *Hawkins* v. *Collier,* 101 *Ga.* 145, 148 (28 S. E. 632) ; McClain v. Lawther, 35 W. Va. 297 (13 S. E. 1003) ; Underhill v. Phillips, 10 Hun (N. Y.), 591; *Brewer* v. *Brewer,* 7 *Ga.* 584; *Rowland* v. *Harris,* 55 *Ga.* 141; *Georgia National Bank* v. *Henderson,* 46 *Ga.* 487 (12 Am. R. 590) ; *Daniel* v. *Andrews,* 2 *Ga. Dec.* (Dudley) 157; Averett v. Booker, 15 Gratt. (Va.) 164 (76 Am. D. 203) ; Terry v. Ragsdale, 33 Gratt. 345. In the last case cited

it is said: "The check is prima facie evidence that the drawer, at the time it was drawn, was indebted to the payees in the amount of the check on an indebtedness previously existing, or created at the time the check was drawn. There is no plainer nor better settled principle of law than that." We are constrained to hold, therefore, that in a suit on a bank check, the payee makes out a prima facie case when he proves the execution and delivery of the check, that he has duly presented it to the drawee for payment, and that payment has been refused. In the first instance the check imports its own consideration, in the sense that it will be presumed, until something to the contrary appears, that there was a consideration moving to the maker. Of course this presumption is rebuttable; and a check which is utterly wanting in consideration is not binding on the maker, unless it has been transferred to an innocent holder for value. See Huntington *v.* Shute, 180 Mass. 371, 372 (62 N. E. 380, 91 Am. St. R. 309) ; Thompson *v.* Sioux Falls National Bank, 150 U. S. 231 (14 Sup. Ct. 94, 37 L. ed. 1063) ; Foster *v.* Paulk, 41 Me. 425. *Judgment reversed.*