1496.  BING *v.* BANK OF KINGSTON, for use, etc.

1. The consideration of a contract may be inquired into and established by
   parol, where the object of the inquiry is not to contradict or vary a
   specific consideration actually agreed on and expressed in the writing.
2. The consideration for a contract may consist in a promise that an
   agreed beneficial thing shall afterwards be done for the maker.
3. The consideration of a contract need not flow from the promisee, but
   may consist in the promise or undertaking of one or more third persons.
4. Commercial paper is prima facie presumed to be founded on a full legal
   consideration; especially is this true where there is a recital of "value
   received," or where the instrument is under seal.
5. Subscriptions to stock in a proposed corporation may lawfully be evi-
   denced by promissory notes given for the price thereof and made payable
   to some person in the nature of a trustee, who holds them for the pur-
   poses of the proposed corporation.  The payee may, upon the charter
   being obtained, sue upon the notes, for the use of the corporation.
6. An application for a charter should state the amount of capital to be
   employed by the proposed corporation.  It is not necessary to pay in
   the capital or any part of it until the charter has been obtained and the

corporation is about to commence business; hence it is unnecessary to recite in the application that the capital has been paid in.

7. A person is not to be relieved of his contract made while he was under the influence of voluntary drunkenness brought about in no wise by the instigation of the other party, unless the intoxication was so great as to deprive him of the use of his reasoning faculties and the other party had notice of his condition.

8. Ambiguities in a written contract may be explained by parol.

Complaint, from city court of Cartersville—George H. Aubrey, judge pro hac vice. October 26, 1908.

Argued December 14, 1908.—Decided February 9, 1909.

The Bank of Kingston, for the use of the Farmers' Gin & Warehouse Company, sued Bing on three promissory notes, and obtained verdict and judgment. The recitation of the petition is that the notes were given for eight shares of the capital stock of the Farmers' Gin & Warehouse Company. The defendant answered, that if he signed the notes, he was so drunk as to be deprived of reason when he signed them; that he received no consideration from the Bank of Kingston, and that as between him and the bank the notes are wholly without consideration. The plaintiff's proof tended to show, that the defendant signed the notes while he was sober; that there was a proposition to organize a corporation to carry on the business of a gin and warehouse company, and notes were being taken from those interested in the organization, in order that funds might be realized wherewith to finance it. The name of the proposed corporation had not been agreed upon; so the notes were made payable to the Bank of Kingston, to be held by it for the uses of the corporation when organized. The notes were dated July 30, 1906, but the plaintiff's witnesses testified that they were not actually taken until late in August, and were antedated, to make them uniform with similar notes of the others who were to take the stock. The application for charter was filed October 16, 1906, and the charter was granted on November 13, 1906. The defendant's testimony went to show that he was drunk and had no knowledge of the transaction, and that as soon as he became sober he repudiated it. The case comes to this court on the overruling of a motion for a new trial. Further facts necessary to an understanding of the points presented will be stated in the course of the opinion.

*J. B. Conyers*, for plaintiff in error.   *J. M. Lang*, contra.

Powell, J.   (After stating the foregoing facts.)

1.   The first special exception appearing in the record is that the court allowed a witness to testify that the notes were given for eight-shares of stock in the gin and warehouse company; the objection being that the parol testimony was incompetent to add to the terms of the notes.   The notes contained no recital as to consideration, other than the general language "value received."   It is elementary that the consideration of a writing may be inquired into and established by parol, where the object of the inquiry is not to contradict or vary a specific consideration actually agreed on and expressed in the writing.

2.   Another point made is that the notes were without consideration because the charter was not applied for or obtained until after the notes were given, and that as no common contract of subscription under the Civil Code, §3661, was shown, there was no consideration for the contract when it was made.   A contract may be valid though based on no consideration presently supplied, if there is a promise that one shall be supplied.

3.   It is said, however, that the Bank of Kingston gave no present consideration for the notes, and did not agree to supply, and, under the charter and the purposes of its creation, could not agree to supply in the future, the consideration contemplated,—that it had no authority to organize other corporations and to agree to deliver shares of the capital stock of corporations to be organized in the future.   The fallacy of this argument is that it overlooks the proposition that the consideration of a contract need not flow directly from the promisee, but may be the promise or undertaking of one or more third persons.   Civil Code, §3664.   The consideration for the contract was not an agreement on the part of the bank to organize the corporation and deliver the capital stock, but was the agreement of the promoters of the proposed corporation that there would be issued to him and he might own eight shares of the capital stock of the corporation when it was duly organized.

4.   The notes were negotiable in form, recited that they were given for "value received," and were also under seal.   Exception is taken to the following instruction of the court to the jury: "Negotiable notes similar to these are implied to have a consideration, but that implication may always be rebutted by proper pleading and evidence in support thereof."   There was certainly no

error as against the defendant in this charge. Civil Code, §3656; Joyce on Defenses to Commercial Paper, §§183, 186; *Purcell* v. *Armour Packing Co., 4 Ga. App.* 253 (61 S. E. 138).

5. Exception is also taken to the following instruction of the court to the jury: "If these notes were given as subscription to stock in a company organized or being organized, whose name had not yet been determined upon, and if the executor, the maker thereof, the defendant here, knew of it, agreed to it, subscribed in good faith to this stock hereafter to be delivered, it was a good and sufficient consideration to support these notes." Prior to the organization of a corporation certain preliminaries are, in the nature of things, necessary. Frequently, and indeed almost generally, an agreement to organize, containing a subscription to the capital stock, is prepared and signed. Sometimes another course is pursued and the parties to the transaction pay into the hands of some person, designated or agreed upon, the capital to be employed. Again, they may not pay in the capital in cash, but may give notes, and these notes, being deposited with some person in the nature of a trustee, evidence the subscriptions of the respective parties to the stock. Any one of these arrangements, or even a combination of them, is permissible and lawful. The present case does not involve any of the propositions arising from changes made in the nature or form of the proposition after a subscriber or proposed future stockholder has agreed to become a member of the corporation. Of course, if a person subscribes for stock in a corporation to be organized on a certain basis or for certain purposes, and the things thus agreed upon are changed or never come into existence, he is not to be held to his contract. See *Hendrix* v. *Academy of Music, 73 Ga.* 437; *Memphis Branch R. Co.* v. *Sullivan, 57 Ga.* 240. Nor is there in the present case any such point as there was in the case of *Allen* v. *Hastings Industrial Co., 2 Ga. App.* 291 (58 S. E. 504), that the proposition to subscribe was withdrawn before the agreed amount was subscribed or before it became a completed contract. We think that as applied to the facts of the present transaction the charge of the court was correct. See generally, on this subject, *Branch* v. *Augusta Glass Works, 95 Ga.* 573 (23 S. E. 128).

6. It is said, however, that the proposed corporation never obtained a valid charter, because the application for charter did not

state the amount of capital stock actually paid in. A copy of this application is found in the brief of evidence and contains the following declaration: "The capital stock of said corporation is to be ten thousand dollars." Among the things which the code requires to be stated in an application for charter is "the amount of capital stock to be employed by them actually paid in." Civil Code, §2350, par. 1. This, however, must be construed in pari materia with the provision of the third paragraph of this same section, that "No corporation created under this section shall commence to exercise the privileges conferred by the charter until ten per cent. of the capital stock is paid in." The words "actually paid in" do not relate to the time of the filing of the application for charter, but to the time when the organization is completed. The words are inserted into the context as a legislative declaration that the amount of capital stock which the applicants state is to be employed shall be the same as that which they shall be subsequently bound to pay in before the personal liability of the incorporators is discharged. It is merely a reminder of the law's prohibition against the organization of a corporation with a fictitious amount of capital stated in the charter. The law does not require any part of the capital stock to be paid in before the charter is granted and the corporation begins business as a legal entity. *Branch* v. *Augusta Glass Works,* supra. Hence a statement in the application of the amount of capital which the corporators propose to employ is sufficient. The law fixes the responsibility for a failure to pay in that amount on or after organization. See *Walters* v. *Porter,* 3 Ga. App. 73 (59 S. E. 452). Just as was the case in the *Augusta Glass Works* case, supra, this is an effort to compel payment from one of those who had become bound by his promise to pay in a portion of the necessary capital. The suit properly proceeds for the use of the corporation in the name of the bank which was the designated or agreed trustee to hold the notes or funds pending the obtaining of the charter and the organization thereunder.

7. If the defendant was not released from his contract by reason of his drunkenness at the time of its creation, he has been properly held to it. Upon the subject of drunkenness as a reason for avoiding the contract, the court instructed the jury as follows: "Voluntary drunkenness, not induced by the party of the other part, and

which is not sufficient to deprive a man entirely of his reason, will not avoid his liability on a contract, provided there is no fraud or imposition on the part of the party of the other part." The defendant excepts in general terms to this charge. As there was no contention that the defendant's alleged drunkenness was in any wise induced by the opposite party, we think it correctly stated the rule of law applicable to the case. See Civil Code, § 3654. The jury was fully authorized to find, under the evidence, that the defendant was perfectly sober when he signed the notes.

8. The notes contained the following language: "With interest from 8 at 8 per cent. per annum." The witness who drew the note was permitted to testify, over objection, that under the agreement all the notes were to bear interest from July 30, 1906, to which time they were antedated on their face, and that, intending to write the word "date," as the period from which interest was to run, by inadvertence he wrote "8" in the blank space left in the note. As thus written, the note was ambiguous and subject to parol explanation. Even if this is not correct, the court, in the absence of explanation, by construction would have to look to the fact that the figure "8" is an abbreviation in common use, in giving dates for the month of August, the eighth month in the year; and since the computation from July 30 would not give a result materially different from a computation made from August 1, no serious harm has been done the defendant in any event. See *Leffler Co.* v. *Dickinson*, 1 *Ga. App.* 63 (57 S. E. 911). No error appears, and the evidence fully supports the verdict.

*Judgment affirmed.*